## INTERNATIONAL ORDER OF TWELVE KNIGHTS & DAUGHTERS OF TABOR OF TEXAS v. SNELL.

### No. 1482.

Court of Civil Appeals of Texas. Waco.

June 7, 1934.

Barney A. Garrett, of Waco, for appellant.

R. D. Evans, of Waco, for appellee.

ALEXANDER, Justice.

P. H. Snell filed this suit against International Order of Twelve Knights & Daughters of Tabor, a fraternal benefit society, to recover the sum of $300 alleged to be due on an insurance certificate issued by the defendant on the life of plaintiff's mother, Mollie Snell; also the sum of $75 claimed to be due as a burial fund, $298 claimed to be due as sick benefits, and reasonable attorney's fees and penalties as provided by statute. The insurer defended mainly on the ground that the insured had failed to pay the necessary dues and assessments and had allowed her policy and other benefits to lapse. In reply, the plaintiff alleged that long prior to the death of the insured she became totally and permanently disabled and entitled to certain sick benefits which should have been applied to the payment of her dues so as to keep her policy and other benefits in good standing, and that by reason thereof same had not lapsed. The jury, in answer to the special issues, found, in substance, that the insured, Mollie Snell, became totally and permanently disabled on July 22, 1928, and remained so until her death on January 20, 1932, and that she was in good standing with the defendant order at the time she became disabled. The court entered judgment for the plaintiff for the sum of $300 insurance, $75 burial fund, $298 sick benefits, $80.76 penalties, $50.52 interest, and $75 attorney's fees. The defendant appealed.

■ The endowment certificate sued on bound the order to pay to the beneficiary named therein the sum of $300 upon the death of the insured only in the event she was in good standing with the endowment department at the time of her death. In order to keep in good standing, it was necessary for the member to pay a tax to that department of $1.50 per quarter, and a failure to pay such tax on or before the first day of the first month of the endowment quarter ipso facto suspended such member. The undisputed evidence shows that the insured ceased to pay the tax to the endowment department on December 1, 1930. Consequently all rights under the certificate lapsed long prior to the death of the insured unless, as contended by appellee, the insured on account of her illness was excused from the payment of the endowment tax. It is appellee's contention in this connection that under the by-laws a member could not be suspended from the endowment department for the failure to pay the endowment tax during illness, and, since the jury found that the insured was totally disabled from the time she ceased to pay the tax to the time of her death, the certificate remained in force. In support of this contention, the appellee cites certain provisions of the by-laws of the local tabernacle, wherein it is provided as follows: "A member cannot be suspended for non payment of dues during the time he is sick so as to prevent him from pursuing his usual avocation. * * * Members cannot be suspended for monthly dues during the time they are sick. The dues must be paid out of their weekly payments." The record reveals, however, that the above-quoted provision constitutes a part of the by-laws of the local lodge or tabernacle and relates solely to the right to retain membership in the local lodge, the dues to be paid therefor, and the sick benefits to be received therefrom, and has no relation whatever to the endowment tax to be paid in order to retain membership in the endowment department. Under the constitution of the order, the endowment department is entirely separate and distinct from all other departments. It is regulated exclusively by the by-laws of that department, and is in nowise affected by the rules and regulations provided for the government of local lodges. Since the insured failed to pay the endowment tax in accordance with the rules of the order, the appellee had no right to recover on the endowment certificate.

What has been said with reference to the right to recover on the endowment certificate applies alike to the right to recover the burial fund of $75. The constitution provides that, in order to secure the benefit of the burial fund, the member is required to pay to the burial department a burial tax of $1.50 per year, and that any member who fails to pay such tax on or before the 31st day of December of each year is automatically suspended. In this instance the insured failed to pay the burial tax, and therefore was not entitled to recover the burial benefits. While illness relieved the member of the necessity of paying monthly dues to the local lodge, it furnished no excuse for the failure to pay the annual burial tax.

■ Each local lodge was allowed to determine for itself the amount of sick benefits that it would pay to a member during illness. The obligation to pay such benefits was one that was assumed solely by the local lodge, and the Grand Fraternity, appellant herein, was in nowise responsible therefor. Hence appellee was not entitled to recover from the appellant for any uncollected sick

benefits due his mother by the local tabernacle.

The judgment of the trial court is reversed, and judgment here rendered that the appellee recover nothing herein.