GRAND UNITED ORDER OF ODD FELLOWS OF TEXAS V. HATTIE WHITE.

No. 6886. Decided June 9, 1937.
(105 S. W., 2d Series, 886.)

*Mason & Mason,* of Dallas, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the Grand Lodge and the Endowment Department are responsible to the beneficiary for the failure of Local Lodge to transmit dues collected from its members, or dues for which the Local Lodge assumes to collect and pay out of its funds for a sick member. Free & Accepted Masons of Texas v. Brown, 9 S. W. (2d) 364; International Order of Daughters of Tabor v. Snell, 72 S. W. (2d) 1107; United Brotherhood of Friendship v. Wilson, 53 S. W. (2d) 95.

*H. C. Ford* and *B. W. Ashworth,* both of Dallas, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

In the year 1910, the Endowment Department of the Grand United Order of Odd Fellows and Ruthites in Texas issued a policy to Anderson White, entitling him to participate in the beneficiary fund of said Endowment Department to the amount of $500.00, the benefit being payable to his wife, Hattie White. The policy was reissued in 1918. The quarterly endowment dues were $2.55, and the annual burial tax was $1.50. White paid his quarterly dues to the Endowment Department until October, 1930, which kept his policy in good standing until January, 1931. He also paid his annual burial tax in November, 1930, which apparently kept that benefit in good standing for one year. Thereafter, he paid no dues and no burial tax, and died on February 17, 1933. The Endowment Department of the Order refused payment on the certificate, contending that it had been forfeited by failure to pay the necessary dues. This suit was brought against the Grand United Order of Odd Fellows, although it appears that possibly the "District Endowment and Burial Department of the Grand United Order of Odd Fellows and Ruthites in Texas," which issued the policy, is a corporation. In the trial court judgment was in favor of Hattie White against plaintiff in error Grand United Order of Odd Fellows for the amount of the policy, interest, penalty, attorney's fees and burial benefit. This judgment was affirmed by the Court of Civil Appeals. 78 S. W. (2d) 639.

As above pointed out, the policy in question was issued by the Endowment Department of the Grand United Order. That department appears to have been created strictly in accordance with the provisions of Articles 4820 to 4859d of the Revised Statutes of 1925. It is governed by its own constitution and by-laws, and its policies are issued in accordance with and subject to such constitution and by-laws. The constitution and by-laws appear to contain, in substance, Article 4834 of the Revised Statutes declaring what shall constitute the agreement between the society and its members. They also expressly provide that members holding beneficiary certificates must on certain named dates pay to the Endowment Department certain dues and a burial tax; and expressly provide that if a member fails to make payments the benefits of the policy shall be ipso facto forfeited. The certificate in this instance contains a provision that it was accepted subject to all of the laws, rules and regulations of the fraternity, and should be null and void if the member did not comply with all of the laws, rules and regulations of the Endowment Department.

It is admitted that there was a failure of Anderson White to pay the requisite dues and burial tax, and that his certificate lapsed long prior to his death, unless his failure to pay the Endowment Department dues was excused by his disability and his reliance upon the rule of the local lodge hereinafter mentioned.

Prior to his death Anderson White had been a member of Comet Lodge No. 3134, being a local lodge of the Grand United Order of Odd Fellows. That lodge appears to have adopted certain rules, regulations and provisions for its own government. Members were required to pay monthly lodge dues of 50 cents. There was a provision for payment by the local lodge of a sick benefit of $3.50 per week, but for no longer period than four weeks. Among these rules and regulations was the following:

"After four successive weeks' sickness and a member is still sick and under the care of a reputable, practicing physician, he shall be exempted from paying monthly dues while sick, and all financial obligations due the Grand Lodge or the Endowment Department by such sick member shall be paid from the General Funds of our Lodge."

It is undisputed that the local lodge did not pay to the Endowment Department of the Grand United Order the Endowment Department dues and burial tax necessary to keep the certificate of White in good standing. There is some testimony to the effect that the lodge advanced White funds on one occasion to pay his dues, upon an agreement on his part to repay the amount, but there is no proof that afterwards there was any promise on the part of the lodge (other than that evidenced by the rule), or any action on its part which could be interpreted as an assurance that the lodge would pay the Endowment Department dues.

The theory upon which defendant in error based her case is stated in First Counter Proposition submitted in the Court of Civil Appeals, which is as follows:

"The plaintiff predicated her right to recover against the defendant upon the grounds that her deceased husband, Anderson White, was in good financial standing with his local lodge and with the Grand Lodge, and that upon his then becoming sick and disabled, under the by-laws of the local lodge it was the duty of the local officers to pay out of Local Lodge funds his dues to the Grand Lodge, and the local officers having failed to do so, nevertheless he was in good financial standing with the Grand Lodge, because the local officers were the agents of

the Grand Lodge, and the Grand Lodge being bound by the acts of their agents, the court did not err in entering judgment in favor of plaintiff and against the defendant."

This theory appears to have been adopted in the Court of Civil Appeals.

1 Manifestly, it seems to us the rule of the local lodge quoted above was binding only between the local lodge and its members, and could not be binding upon the Endowment Department of the Grand United Order, so far as payment to it of its dues was concerned. In the case of International Order of Twelve Knights and Daughters of Tabor of Texas v. Snell, 72 S. W. (2d) 1107, where there was a situation almost identical with the present one, the Court of Civil Appeals of Waco stated:

"Under the constitution of the order, the endowment department is entirely separate and distinct from all other departments. It is regulated exclusively by the by-laws of that department, and is in nowise affected by the rules and regulations provided for the government of local lodges. Since the insured failed to pay the endowment tax in accordance with the rules of the order, the appellee had no right to recover on the endowment certificate."

2 But it is argued that the District Grand Master approved the rules and regulations of the local lodge, and this had the effect of constituting an adoption of same by the Endowment Department of the Grand United Order. We do not think so. The constitution and by-laws of the Endowment Department expressly provided that "no subordinate body or local lodge or local household, nor any of the subordinate officers or members shall have the power or authority to waive any provision of the laws and constitution and by-laws of this corporation." Besides, under the statute governing such societies, and especially under Article 4835 of the Revised Statutes, we think an attempted substitution of the promise of the local lodge contained in its rules and regulations for the obligations of the individual member would have been in violation of the constitution and by-laws of the society, and against public policy.

3 In our opinion, there is such a conflict between the decision of the Court of Civil Appeals in this case and the decision of the Court of Civil Appeals in the Snell case, supra, as gives the Supreme Court jurisdiction.

The judgments of the Court of Civil Appeals and of the trial court are reversed and judgment is here rendered in favor of plaintiff in error.

Opinion adopted by the Supreme Court June 9, 1937.